Our next case for argument is Shakman v. Clerk of Cook County. Mr. Vaught. Good morning, may it please the court. My name is Adam Vaught on behalf of the Clerk of Cook County, Karen Yarbrough. The district court below should be reversed because it failed to vacate the 1991 decrees and the 1972 decrees under Rule 60B. The 1991 decree was entered four years after this court had already ruled in Shakman 3 that plaintiffs lacked standing to bring hiring claims and dismiss those claims with prejudice. However, in 1991, plaintiffs brought a consent decree to settle those same claims which have been dismissed and they've been found to lack standing. So that decree should not have been enforced. Second, the 1972 decree should have been dismissed under Rule 60B-5 because the change in law in fact most importantly that the complaint has presented presents a non-justiciable political question under the Supreme Court's recent case of redistricting of RUCO versus common cause. Mr. Vaught, I take it you agree that no Rule 60B motion was ever filed, at least not as a formal matter? As a formal standalone motion, no 60B motion was filed. However, in response... Yes, Your Honor, I believe it does because in response to plaintiff's motion, we filed... Has it ever so held? I have not found... I don't think the briefs tackle this directly, is that the Supreme Court has said pretty consistently that the rules of appellate jurisdiction need to be clear and mechanical. And the argument that sort of something that might have been a motion but wasn't and was addressed by the district court even though there was no motion should be treated as if it were doesn't sound like a clear and mechanical rule that can be applied as a matter of appellate jurisdiction. That's my concern here. Your Honor, I think what the court should do is look to the actual order and look to the procedure in which it was brought. And so in plaintiff's file their motion for supplemental relief. In response, the clerk said that the court should deny the motion in part because it should vacate the decrees under Rule 60B. Plaintiffs then filed a reply to that, which argued that they have standing and the case is justiciable and that 60B is inappropriate. The clerk therefore asked to file a surreply brief on those issues. And the court said that it recognized the request under 60B to be in the form of a cross motion. We then held... We filed our surreply. There was an evidentiary hearing on the factual issues. And then the court in its order specifically stated that it was looking at whether or not the court should dismiss the decrees under Rule 60B. And then went through the analysis post on whether there was a change in fact and a change in law to justify the justified vacating the decrees. Mr. Bond. Yes, Your Honor. I'm sorry to interrupt you. What's been going on between 1991 and 2019? One of the things that I have the hardest time figuring out is how a consent decree can remain in place. I think it's either quarterly or semi-annually status reports get filed. The docket has over 7,000 entries. And we're now having a tangle here about, well, did you file 60B or did you not file 60B? One of the points you seem to make, if I understand correctly, is that the clerk's office has long moved past the problems that gave rise to the consent decree. That patronage, promotions, or hiring practices are no longer an issue. Why, 20 years ago, you didn't go in with a formal Rule 60B motion and say, the time is long gone for these consent decrees? Your Honor, if I could first just say procedurally what's happened since 1991 to address the first part. And then I address the second part is why we didn't go in 20 years ago. In 1991, the decree was entered, which had a, there's three permanent injunctions. The first is that there will be no hiring for non-exempt personnel based on improper political factors. The second is that the exempt list has to be approved by the court. And the third is that there shall be no non-exempt position that's filled without first prior public posting. It had a 10-year plan of compliance. A 10-year plan of compliance, every year, the clerk's office would file a report with the court. It was an audited report discussing what had happened the year before prior to, as the plan of compliance required. The last one was filed in 2002. Following that, nothing happened with this decree until plaintiffs filed their motion in September of 2019. As for why the clerk didn't go in 20 years ago, that I can't answer. I was not there. It was Clerk Orr who entered into the decree, who served as clerk until 2018, when he retired and Clerk Yarbrough was elected to succeed him. I mean, do you, am I seeing a ghost here? Do you think there's a federalism concern with a local office or a local arm of municipal government remaining under what seems to be an indefinite consent decree that nobody seems to be paying much attention to, other than just filing these status reports and the plan of compliance report that you refer to? I think there's an exceptional federalism problem, especially when you look at it in the context of what's happened here. In 2002, the clerk filed the last report and nothing happened for the next 18 years. Plaintiffs made no move. That's why I don't understand why, does the clerk of Cook County have a general counsel or a legal department? Well, they have a general counsel, but then also litigation is handled by the state's attorney's office generally. Okay, and why weren't they in filing a Rule 60B motion to lift the consent decrees in 2003 or in 2004 or in 2005 or in 2020? Well, Your Honor, so again, I don't know why Clerk Orr did not do that. I do know when Clerk Yarbrough came in, she was not aware that there was a consent decree until plaintiffs began investigating, discussing, and then upon the filing of the motion for supplemental relief, that is when we raised the Rule 60B request to vacate the decrees. So you have a clerk who entered, who was elected in 1990, who entered into the decree for reasons I don't understand since there was no standing at the time, but he was the same clerk until 2018 and the plaintiffs who entered into that agreement did nothing with it. And so it really essentially, though I've not seen this as an official legal term, became a dormant consent decree that was only picked up whenever a new office holder was elected, which I think goes directly to the federalism problems, is that plaintiffs shouldn't be able to have a consent decree, which they do nothing with, because for example, Clerk Orr is the one who changed the list that they complain of whenever Clerk Yarbrough came into office, she was handed an exempt list, and that's what she used under the understanding that that was proper. The plaintiffs then used the consent decree and used that exempt list as a justification to ask the court to put in a monitor. So I think the federalism problems are exceptional because there shouldn't be consent decrees that just lie around dormant and they get picked up whenever a new office holder gets in who a plaintiff may not agree with. Furthermore, the things that were complained about initially... And I got to tell you though, that seems like it's on your client. I mean, I understand office holders change and time goes on, but when they come in like they do and the consent decree remains on the books, nobody's asked for it to be taken off and point to facts that bring life into the dormancy, it's still on a federal court's docket, whether it should or not. And it's just the whole posture that this case comes to us in makes very little sense to me. Your Honor, I don't disagree with you on that. I've tried to learn this in the past year or so. It's a 50-year case where it seems like there's various cases within the case with various different offices. And the clerk's office had entered into a decree where a lot of other... There was never a supplemental relief order, which a lot of offices have had, which is essentially what plaintiff's motion was trying to impose upon the clerk. Other offices had entered into agreed supplemental relief orders that were negotiated over time. So maybe let me put Judge Easterbrook's point a different way. Why didn't you file a Rule 60b-5 motion the moment there was a whisper of concern about compliance with the consent decree? Because we filed that as the response to the plaintiff's motion for supplemental relief. It says the court should not grant it, but what the proper course is... You filed it as a response. You mean raised it in an opposition brief? Correct, Your Honor. As opposed to filing a freestanding Rule 60b-5 motion? That's correct, Your Honor. And Judge Shank here, he said he viewed it as a cross-motion. He treated it as such. He did not treat it as though it was just a response. He treated it as cross relief that was being sought. And there was two competing theories. One, that there was a violation of the decree and that a monitor should be opposed. And the other is that the decree should be vacated. If a stand-alone Rule 60b motion had been filed, it comes to the court and it looks identical to how it now is presented to this court. The clerk would have raised the issues as they were raised. Plaintiff would have responded the same way. And plaintiffs filed a post-trial motion that spent half of the motion talking about standing justiciability issues. And so, I assume Judge Shank here would have ruled the same. So, if you look at the order, if you look at it as form over substance, the issue is the substance are it was a denial of a 60b motion. And the reason that it was filed when it was was because I can't state. Judge Easterbrook again, the way you've just stated it is exactly what concerns me about appellate jurisdiction. You're saying, let's ignore what the actual forms were. Let's look at substance over form. And the question I have is, how is that consistent with the fundamental principle that rules of appellate jurisdiction have to be applied mechanically? Once we adopt a substance over form doctrine, we can't have any mechanical rules anymore. And then we're in the I'm worried. And I wish you would address that problem. I understand the problem you're saying, Judge, is that you want a motion, you want a response and a reply, and then the judge rules on that. But that is what you do have before you. We have the request that's within. It is clearly stated we're moving. We're asking under 60b for the decrees to be vacated. And those were responded to by plaintiffs. And then we replied. And then the court addressed those issues clearly and then denied the request. So if you look at what the district court did and what the procedure was, the district before the district, I don't think you're getting my question. I wish you would address what I'm asking. You keep saying whenever I ask or whenever Judge Scudder asked, you keep saying, let's look to substance rather than form. My question is, if we look to substance rather than form, can we any longer have a doctrine that appellate jurisdiction is determined mechanically? That is, is a look to substance rather than form approach consistent with the Supreme Court's insistence that appellate jurisdiction be determined mechanically? I think it is mechanical. If you look at how the court has ruled and what was presented to it. I don't know that to say if you just take substance over form, then everything is mechanical, just denies that there is a problem. I would really like you to address the problem rather than repeatedly deny that there is a problem. There is a problem. It's a difficult one to address, but it can't be wished away. I understand your honor. If we had filed a 60b motion, I don't think anybody would be even though all the arguments would have been the same. Mechanically, I don't think it would change the fact that there would be a final order that would have ruled the same way. One of the, at the heart of Judge Easterbrook's question, which I know you probably realize, is 60b is not a rule that is unique to the Shackman consent decrees. 60b applies across all civil cases. That's one of the reasons why this is very difficult here, when you just see, well, we pointed to 60b in a brief and it kind of effectively became 60b. If we do a find, we can find four or five or six references in Judge Shankner's order to 60b. So, it sure smells like 60b and therefore it must be a 60b motion. I mean, that's okay. We do that here. What do we do tomorrow? When we're dealing with a contract dispute or prisoner litigation or whatever? I think you have to look at how the judge ruled. I think Judge Shankner clearly went through the analysis and that he denied it and then went through the factual circumstances and then granted plaintiff's relief. Your Honor, I see that I had asked for five minutes for rebuttal. I'm happy to answer the question if I didn't answer it completely, but otherwise I'd ask if I could reserve the remaining time. Judge Scudder, is it okay? Oh yeah, fine with me. All right, then thank you very much. Mr. Hayes. Good morning, Your Honors. Brian Hayes here on behalf of the appellees. We are in agreement and I have some of the same concerns that the Court has been raising. It's plaintiff's contention that the Court lacks jurisdiction because this is not a final order under 1291 and it's not an order resolving a Rule 60b motion to vacate and therefore there's no jurisdiction under 1292. As Your Honors have a long, long time, it sets out a procedure and standards for a defendant in any case, but particularly in these types of case, to come forward when they believe that they can meet the standard under Rufo v. Inmates of Suffolk County, Board of Education v. Dowell, and Horn v. Flores to show that the purpose of the consent decrees have been accomplished, that the office has been complying in good faith with the consent decrees, and that the office has To answer Judge Scudder's question from earlier as to why the office had not filed the motion sooner, I don't believe they could have met those standards, Your Honor. The amendments that Mr. Vaught referred to, the unilateral changes to the exemplars without seeking court approval to verify that those positions actually did meet the Bronte standard for political considerations to be appropriate for the job, shows that the office was not complying. Mr. Hayes, my perception might be wrong. It wouldn't be the first time. And that is that this looks like a dormant consent decree until you came forward. Is that mistaken? I mean, it just seems to have at least as applied to the clerk of Cook County to have remained on filed. But until you came forward on behalf of your clients in, what was it, 2018 or 2019, it had just been sitting there. Should that concern us or not? I do not believe that it should concern you, Your Honor, because again, the Supreme Court has set forth the procedure for a defendant to come in and establish that they are in compliance with the decree and that the decrees can sunset. So your point is that they should come in, formally invoke 60B-5, file a motion, the adversarial process will kick in from then, and a district court can make a finding on it? Yes, Your Honor. And that was what happened in the Rufo case and in the Horn case. On remand, after the Supreme Court decisions, the defendants filed the rule 60B motion there. The court allowed discovery on the issues of whether or not the defendant met the standards under Rufo. So after discovery, there was an evidentiary hearing. In one case, it was a three-week hearing. Another case, I believe, was a two-day hearing. There were witnesses. There were affidavits that were submitted. And then the court made the up-to-date findings of fact that Horn requires in order to rule on whether or not the decree should be modified or dissolved. And that's the issue here, is that the defendant has the burden of coming forward under Rule 60B and presenting an affirmative case showing that they have met the standard to modify or to vacate the consent decree. In our case, we came forward, and in this case, Your Honor, is very similar to the Shackman 3 case that this court decided with Judge Kane as one of the Chicago. In their opposition to the motion to enforce, the city raised Rule 60, saying that the plaintiffs' changes in law of standing rendered these plaintiffs no longer able to enforce the decree. And what this court said, reversed and remanded, saying, if on remand, the city wishes to pursue a Rule 60 motion, then the court would consider the Rule 60 motion at time. Now, again, just like the clerk's office here, the city in 2005 was not able to do that, because when we got into the evidence with the city, we discovered that there had been rampant violations of the consent decrees by the city. And Judge Anderson appointed a monitor in that case. And then after the monitor was appointed and more evidence came to light, the city ultimately entered into what they called the Agreed Settlement Order and Accord. And here's the important thing in terms of federalism, Your Honor. Our goal here is to not keep these cases going on forever. We've been working very hard with these defendants to end federal court oversight. And through the procedure that Judge Schenker entered in this case and that Judge Chang is now very ably overseeing, the appointment of a special master to go in and to monitor compliance with the court order, to monitor compliance with the durable remedy that the defendant has proposed. Typically, it's some sort of an employment plan or a hiring plan. And we've been able to bring the city of Chicago, Cook County, Cook County Sheriff's Office, the Forest Preserve District of Cook County, all of those offices have been able to achieve substantial compliance. All of them have been able to bring federal court oversight to an end. And this is not a difficult consent decree to comply with and to achieve Rule 60B standards. But what we haven't seen in the clerk's office and what the overwhelming evidence that Judge Schenker found demonstrated is that this office at this time is not committed to complying with the decrees. It's not committed to rooting out political discrimination and preventing unlawful political discrimination. But once this office commits to that, it's not going to take a long time for them to come up with, they've already started in March, in response to this litigation, they started drafting a personnel manual that lays out hiring procedures. That was finalized in March of this year on the eve of our evidentiary hearing. So what the office needs to show is that they're actually going to implement that. And the record shows right now, Your Honor, that the personnel manual has not been implemented. None of the employees have been trained on it yet. And the clerk has indicated that she's planning on making significant changes to it. Now, once she's come up with that plan, we'll have a monitor to observe to make sure, as Judge Schenker held, that that plan is actually followed more in the observance than just on paper. And if the clerk can show that her office can do that, then we'll then she'll be able to file a Rule 60B motion. And as we did with the city, the county, the sheriff, the forest preserve, the plaintiffs will stand up joyfully with the defendant and say they did what they needed to do. There's a durable remedy in place. They've complied in good faith, not perfect, but complied in good faith with the consent decrees, and federal court oversight should come to an end. And also, how many other decrees are there outstanding other than one with the there is the Cook County Assessor, the Cook County Recorder of Deeds, and the Cook County Treasurer, and the Water Reclamation District. Oh, and I'm sorry, the governor as well. So you've gotten rid of some, but certainly not all of them. Right. Well, the governor believes that the state has met the standard for substantial compliance. The court monitor and plaintiffs disagree, but that's being litigated right now in front of the governor. And they just recently filed their employment plan. So we're hopeful that within the next 12 months that they will be in substantial compliance. The Recorder of Deeds, again, when it was under now Clerk Yarborough, and the record before the trial court on this was broad, Recorder Yarborough did not comply with her own internal employment plans. She did not comply with the consent decrees. And so the recorder's office under Clerk Yarborough, and then after she became the clerk, was not able to achieve substantial compliance. The record is being merged into the clerk's office. So the clerk will then substitute in under Rule 25d as the defendant on the recorder matter. And again, it's our hope with the monitor in place that this office will be able to do what the city did under Mayor Emanuel, what the county did under President Preckwinkle, and Forest Preserve did under President Preckwinkle, and the sheriff did under Sheriff Dart. If there's a commitment to actually implementing these plans, this durable remedy as required under Dowell, this office will get to substantial compliance. But the burden under Rufo, under Dowell, under Horn, the burden is on the clerk to show that the purposes of the decrees have been accomplished, that she's complied with it in good faith, and that there's a durable remedy. And the findings of fact that the trial court, which this court should, I invite the court to review, shows that none of those standards have been met yet. And so therefore this particular office is not yet ready to file or to meet the standards for a Rule 60b motion. So, you know, as we said, Your Honor, Mr. Hayes, if you're done, there's no legal obligation to go on talking. You know, the other argument that I did just want to touch on, Your Honor, is the standing argument. If the court has questions, I would certainly entertain those, obviously. But in this case, the standing argument that the defendant has made in this case is based entirely on ignoring the addition of the Independent Voters of Illinois Independent Precinct Organization as an additional named plaintiff in 1990. And the claims that the IVI-IPO asserted were not just on its own behalf. It specifically invoked Rutan in that amended complaint and said that it was bringing those claims on behalf of its members who were employees and applicants for government jobs. And even the clerk concedes that employees and applicants absolutely have standing to bring a claim under Rutan Bronte, Elrod, and their progeny. And so by bringing in the IVI-IPO on behalf of its members who have, who are applicants and employees, whatever standing issues this court may have found in that point forward, the plaintiffs clearly had standing. But also, in addition to the IVI standing, the plaintiff's candidate classes also have standing to continue to pursue enforcement of these consent decrees. Since Shackman 2 was decided, there have been a number of decisions that have come out at appellate courts and at district courts that have found that a competitive injury creates standing for a plaintiff to bring a lawsuit. And in this case, and what distinguishes our case from the cases cited by the by the clerk's office, is that unlawful political discrimination against applicants and employees is absolutely unlawful. Government offices cannot do that. In the Rocho case, political gerrymandering is perfectly legal. You know, the Constitution assigns that task to the legislatures. And so the plaintiffs there were arguing about, you know, how much political gerrymandering is fair. And that's not the case here. Here, we're not saying that, you know, Republicans are entitled to a certain number of patronage jobs and Democrats are entitled to a certain number of patronage jobs. Our argument is that the First Amendment prohibits discrimination except for a small subset of high-ranking policymaking positions. And so if you're a clerk working at a counter, taking in marriage certificate applications and issuing marriage certificates, whether you're a Republican or Democrat is irrelevant and should not be considered at all. And in this case, the First Amendment rights of candidates to associate with government applicants, job has two coins. Not only is it the right of the employees and job applicants to associate with a candidate, it's also the candidate's right to associate with job applicants and employees. And so the cases that have been decided since Shackman to clearly set forth that that competitive injury does give rise to standing. And in the complaint, Mr. Shackman did allege that because of the unlawful patronage, he was forced to expend money and divert resources from his campaign in order to counteract the patronage army that was arrayed against him. And that same continues to be true today, Your Honor. And so case law is very clear that when a political party, a candidate or an association can allege that they had to divert resources, divert energy from what they would like to be doing in order to counter and unlawful behavior. That is an injury. Spending money is an injury recognized by this court and every other court. And so therefore, the candidates themselves also have standing to continue to enforce these consent decrees. And unless Your Honor has any other questions about standing, I'll just bring this to conclusion. Then the court should dismiss this appeal because the court does not have jurisdiction over the case and they should remand it to allow the clerk if she thinks she can meet the standards and the evidence so far shows that she cannot, but she can file a motion for Rule 60B. Parties can do discovery on that issue and the trial court in the first instance will make findings and apply the Rule 60B standard. At that point, whichever side doesn't prevail would be able to bring an appeal to this court. Furthermore, on the merits, the trial court was well within its discretion. I think you're just repeating yourself, counsel. And so we ask that Your Honor dismiss the case or any alternative to affirm. Thank you. Thank you, Mr. Hayes. Anything further, Mr. Bob? Yes, Your Honor. I'd like to address first the Shackman III decision because I think there is a distinction that's important. In Shackman III, they moved to dismiss the 1983 decree based on 1987 and the court found that the procedural nature of it required it to be reversed because the 1983 decree had standing at the time it was entered because it's been determined by the district court. But before the 1987 here, we have the exact opposite of Shackman III. In Shackman II, the court found plaintiffs did not have standing to bring hiring claims and dismiss the claims. And yet that's what the 1991 decree supposedly settled. Plaintiffs at the time that was entered did not have standing. The 1991 decree is the only decree that Judge Schenker found any violations. I know Mr. Hayes talked about all the things that he alleges the court found, but the court did not find one instance of any political hiring decision made. He found the technical violations that included that the exemplist had not been approved by the court, although it's the same number of positions. And he also found that three jobs had been filled without prior public posting, two executive assistants, and a shopkeeper degree, which was an internal promotion. And in the entire 29-year history of that 1991 decree that was entered with outstanding, those are the only violations that the court found. Not once did he find that the clerk's office has engaged in improper political engagement. And so to Mr. Hayes' point that the court should send this back to file a motion and that the parties can brief it and have an evidentiary hearing, that is what has already happened. So for the court to do this would just repeat efforts that have gone on in the trial court. So the clerk's office believes that we do have jurisdiction under 60B because we expressly asked the court to vacate the decree. The parties briefed it. There was an evidentiary hearing. The court ruled and expressly denied it, which we believe makes that a final order. So the clerk would ask that this court reverse the demand back to the district court with directions to vacate the decree. Thank you, Mr. Vaught. The case is taken under advisement.